Brad H. Bearnson (#3633)
Wayne K. Caldwell (#9466)
Aaron K. Bergman (#13147)
BEARNSON & CALDWELL
399 North Main, Suite 270
Logan, Utah 84321
Telephone: (435)752-6300
Email: bbearnson@bearnsonlaw.com
Email: wcaldwell@bearnsonlaw.com
Email: abergman@bearnsonlaw.com
Please copy: bjensen@bearnsonlaw.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| BROOKE TILLEY,<br><br>    Plaintiff<br> v.<br><br>THOMAS EDISON CHARTER SCHOOL, INC., dba THOMAS EDISON CHARTER SCHOOL - NORTH, a Utah Non-Profit Corporation,<br><br>    Defendants. | Case No. 1:23-cv-00112-BSJ<br><br>**COMPLAINT & JURY DEMAND**<br><br>Honorable Judge: Bruce S. Jenkins<br>Magistrate: |

COMES NOW Plaintiff, BROOKE TILLEY, an individual by and through her attorneys of BEARNSON & CALDWELL, LLC, and hereby complains against Defendants THOMAS EDISON CHARTER SCHOOL, INC., dba THOMAS EDISON CHARTER SCHOOL - NORTH, a Utah Non-Profit Corporation, as follows:

## PARTIES

1. Plaintiff BROOKE TILLEY (hereinafter "Mrs. Tilley" or "Plaintiff") is an individual, residing in the state of Utah, County of Cache.

**COMPLAINT & JURY DEMAND**
*Tilley v. Thomas Edison Charter School, Inc., et al.*
Case No. Page **1** of **14**

2. Defendant THOMAS EDISON CHARTER SCHOOL, INC., dba THOMAS EDISON CHARTER SCHOOL - NORTH ("Thomas Edison") is a non-profit Utah corporation with its principal headquarters in the State of Utah, County of Cache.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3. On or about September 16, 2021, Mrs. Tilley filed a Charge of Discrimination with the Utah Anti-Discrimination & Labor Division and Equal Opportunity Employment Commission (hereinafter referred to collectively as "EEOC").

4. On or about July 19, 2023, the EEOC issued its Notice of Right to Sue, attached hereto as Exhibit "A." Ms. Tilley brings this action within ninety (90) days.[1]

## JURISDICTION & VENUE

5. The Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f).

6. This Court is the proper venue. See 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

7. Mrs. Tilley also had two (2) children enrolled in school with Defendant. Both of Mrs. Tilley's children had disabilities that required special education. Mrs. Tilley had long been having difficulties in securing for her children accommodations as due to them under the Individuals with Disabilities Education Act, Americans with Disabilities Act and § 504 of the Rehabilitation Act. These difficulties directly coincided with Defendant's decision to employ Mrs. Tilley as a Janitor in 2019.

---

[1] See 42 U.S.C. § 2000e-5(f)(1).

Standing Up for Disabled Children.

8. Mrs. Tilley's son was disabled but did not yet have an Individualized Special Education Plan as was required by the Individuals Disabilities Education Act. Prior to becoming employed with Defendant and thereafter, Mrs. Tilley repeatedly informed Defendant that it was her belief that her child was suffering from a learning disability and needed accommodations.

9. After becoming employed by Defendant in 2019, Mrs. Tilley continued to inquire for her son's needed accommodations. During the latter end of 2019, Defendant via its employee Patty Peterson informed Mrs. Tilley that Defendant was well aware that her son needed disability accommodations, but that such resources were not available and coldly stated that such "is why kids have parents."

10. In March of 2020, Defendant closed its doors due to the coronavirus pandemic.

11. In August of 2020, Defendant offered and Mrs. Tilley applied for a teaching aid position. During an interview for the position, Mrs. Tilley inquired what had become of her son's disability assessment, to which Defendant could provide no response.

12. Similarly in Fall of 2020, Defendant informed Mrs. Tilley that it would no longer provide her disabled daughter with accommodations previously established under the Individuals with Disabilities Education Act.

13. Mrs. Tilley continued to advocate for her children's disabilities and in January of 2021 complained to Defendant that it was failing to provide the accommodations that her daughter needed.

14. In response, on February 22, 2021 Defendant's speech pathologist Ms. Clements angrily yelled at Mrs. Tilley that she had "broken trust" by complaining about the failure of

accommodations, and then threatened to retaliate against the child by unilaterally removing the accommodations from her special education program.

15. Mrs. Tilley's daughter was accepted into a different technical school, but when Mrs. Tilley requested a copy of her daughter's special education record, Defendant refused to provide Mrs. Tilley with access. On further investigation, Mrs. Tilley also discovered that the District had failed to properly maintain a special education file for her daughter, and raised this as a complaint to Defendant as well.

16. Because Defendant was insisting that Mrs. Tilley's daughter no longer needed any accommodations, Mrs. Tilley requested a special education meeting. In response to this request, Defendant refused to provide dates and times during which Mrs. Tilley could attend, which was her right.

17. In the midst of the foregoing, on February 18, 2021 Defendant received a referral directly from its staff to assess Mrs. Tilley's son for disability, to determine whether he too should be provided with accommodations. Defendant's staff made a point of describing how frustrated Mrs. Tilley had become as a result of having requested accommodations on behalf of her son for years without obtaining the necessary accommodations.

18. In the beginning of March of 2021, Defendant agreed to perform an Independent Educational Evaluation for Mrs. Tilley's daughter, because Mrs. Tilley had disagreed with Defendant's unilateral changing of her daughter's accommodations. Defendant scheduled the independent assessment for April 2, 2021.

19.     In March of 2021, Mrs. Tilley requested a written notice of her child's forthcoming special education meeting. In response, Defendant's staff appeared outside the doorway of the classroom where Mrs. Tilley was working, and physically threw the notice at Mrs. Tilley.

Getting Fired.

20.     In March of 2021, Defendant's Principal, Shem Smith, approached Mrs. Tilley and asked her to come into his office. Chad Tilley, Mrs. Tilley's husband was also present picking up their children from Defendant's school. Principal Smith looked at Mr. Tilley and asked him to come in as well.

21.     Once inside, Principal Smith proceeded to verbally discipline Mrs. Tilley stating that her behavior as an employee was not "conforming" to Defendant's "positive" work culture. During this disciplinary meeting, Principal Smith specifically raised issues relating to Mrs. Tilley's children.

22.     On April 2, 2021, just fifty (50) minutes before scheduled independent evaluation meeting for Mrs. Tilley's daughter, Principal Smith called Mrs. Tilley and without explanation informed Mrs. Tilley that Defendant was terminating her employment, effective immediately.

Interference, Intimidation, Threat and Coercion

23.     After employing Mrs. Tilley, and particularly beginning between August and December of 2020, Principal Smith would deliberately stalk and follow Mrs. Tilley when she was in the hall and when walking to the restroom. This happened twice, and when Mrs. Tilley left the restroom, Principal Smith would still be there, waiting.

24. On a separate occasion, Mrs. Tilley was working with students in the hallway. Principal Smith without reason came and stood so close behind Mrs. Tilley that she could feel his breath on the back of her neck.

25. As also indicated above, in February of 2021 staff of Defendant berated and angrily scolded Mrs. Tilley when she requested that Defendant provide her daughter with already established as needed accommodations. Furthermore in March of 2021, Defendant, through its employee, deliberately threw a lawfully required written notice at Mrs. Tilley.

26. With Principal Smith's stalking behavior which began in or about the third-quarter of 2020, Mrs. Tilley was as a result experiencing severe anxiety, was having frequent panic attacks in relationship to work, and was having difficulty eating and sleeping.

27. The day after Defendant terminated Mrs. Tilley's employment, Defendant's employee came to Mrs. Tilley's home, barged into the home and repeatedly encouraged Mrs. Tilley not to file a complaint against Defendant for failing to provide Mrs. Tilley's children with accommodations.

## COUNT I

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### Retaliation, Interference, Coercion and Intimidation

28. Mrs. Tilley incorporates the foregoing paragraphs as if set forth fully herein.

29. The Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA") prohibits discriminating against qualified individuals, but also prohibits discriminating against individuals who are not qualified, yet assert the rights of individuals who are:

    **(a)**    **RETALIATION**

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

    **(b)**    **INTERFERENCE, COERCION, OR INTIMIDATION.**

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203.

30. Wherefore, Defendant was prohibited from taking adverse actions against Mrs. Tilley's employment because she as a mother was in accordance with the Americans with Disabilities Act seeking to protect the rights of her disabled children in obtaining meaningful and equal access to Defendant's programs, services and activities. See 42 U.S.C. § 12203(a).

31. Defendant was also prohibited from acts to "coerce, intimidate, threaten, or interfere" with Mrs. Tilley in an effort to dissuade her from engaging in such advocacy. See 42 U.S.C. § 12203(b); see also *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 789 (3rd Cir. 1998) (distinguishing between 42 U.S.C. § 12203(a) and 42 U.S.C. § 12203(b)).

32. Defendant breached its foregoing duties when in humiliating fashion it disciplined Mrs. Tilley in front of her husband, and then promptly terminated her employment without explanation. Because Defendant knew or should have known that Mrs. Tilley's children were disabled and required one or more accommodations, Defendant knew or should have known that Mrs. Tilley's advocacy for her children was a federally protected act. Wherefore, when Defendant

**COMPLAINT & JURY DEMAND**
*Tilley v. Thomas Edison Charter School, Inc., et al.*
Case No.    Page **7** of **14**

as a result of this advocacy elected to quell the advocacy by disciplining and terminating Mrs. Tilley's employment, it did so with intentional or reckless disregard for Mrs. Tilley's rights.

33. Defendant also breached its foregoing duties when it subjected Mrs. Tilley to intimidation, threats, interference and coercion. Because Mrs. Tilley had advocated for the accommodation rights of her children, Defendant stalked Mrs. Tilley in the halls; stalked Mrs. Tilley at the restrooms; literally breathed "down the neck" of Mrs. Tilley; and barged its way into Mrs. Tilley's home without invitation. Defendant knew or should have known that where Mrs. Tilley's children were disabled and required one or more accommodations, Mrs. Tilley's advocacy for those accommodations was a federally protected act. Thus, when Defendant as a result of her advocacy elected to interfere with, intimidate, threaten and coerce Mrs. Tilley away, Defendant did so with intentional or reckless disregard for Mrs. Tilley's rights.

34. As a result of Defendant's breaches, Mrs. Tilley was damaged. Mrs. Tilley lost her employment, was required to seek medical care, was subjected to embarrassment, ridicule, loss of reputation, humiliation and has suffered longstanding and severe emotional distress as a result of Defendant's breach of its duties.

35. Mrs. Tilley seeks special damages, general damages, punitive damages, her reasonable attorney fees and taxable costs, the qualities and amount of which are to be determined by the Jury at trial.

## COUNT II

### VIOLATION OF REHABILITATION ACT
### Retaliation

36. Mrs. Tilley incorporates the foregoing paragraphs as if set forth fully herein.

37. Congress's expressly stated purposes for the Rehabilitation Act is to "ensure, to the greatest extent possible, that youth with disabilities and students with disabilities . . . have opportunities for postsecondary success." 29 U.S.C. § 701(b)(5). Wherefore, section 504 of the Rehabilitation Act provides that no student who attends a school receiving federal financial assistance shall "by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . ." *Id*. at § 794(a).

38. Defendant retaliated against Mrs. Tilley when in violation of the Rehabilitation Act when Mrs. Tilley engaged in the protected activity of advocating for her children's accommodations, and in proximate time therewith and in result thereof Defendant intimidated Mrs. Tilley, disciplined Mrs. Tilley in relation to her job duties, terminated her employment, and sought to coerce Mrs. Tilley away from pursuing her disabled children's rights.

39. As a result of Defendant's breaches, Mrs. Tilley was damaged. Mrs. Tilley lost her employment, was required to seek medical care, was subjected to embarrassment, ridicule, loss of reputation, humiliation and has suffered longstanding and severe emotional distress as a result of Defendant's breach of its duties.

40. Mrs. Tilley seeks special damages, general damages, punitive damages, her reasonable attorney fees and taxable costs, the qualities and amount of which are to be determined by the Jury at trial.

## COUNT III

### 42 U.S.C. § 1983
### First Amendment and Freedom of Speech

41. Mrs. Tilley incorporates the foregoing paragraphs as if set forth fully herein.

42. Plaintiff raises this third cause of action under 42 U.S.C. § 1983 – Civil action for deprivation of rights, as a claim for Defendant's deprivation of Mrs. Tilley's First Amendment Rights under the United States Constitution, and second, as a cause of action in the alternative to the extent it is determined that the Rehabilitation Act or the Americans with Disabilities Act do not already afford to Mrs. Tilley a meaningful means of seeking her recovery.

43. The First Amendment secures to Mrs. Tilley a specifical constitution right: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances." U.S. const., amendment I. The Fourteenth Amendment due process clause of the constitution secures this same right against to citizens as against the state and local governments. See U.S. const., amendment XIV. Furthermore, while Defendant may as a charter school be a 'private' purveyor of educational services, by virtue of state law Defendant is treated as nothing less than a public entity. See Utah Code Ann. § 53G-5-401(a) ("Charter schools are . . . considered to be public schools within the state's public education system"); see also *id*. at § 53G-5-404(3) ("A charter school shall meet all applicable federal, state, and local health, safety, and civil rights requirements").

44. In this particular instance, Mrs. Tilley was engaging in a protective activity. She expressed openly while at work her opinion and belief that Defendant needed to provide and was failing to provide her children with disability accommodations. She spoke openly regarding these shortcomings to her coworkers, to other parents, and online on the internet in an effort to assemble with others and gather support and spread awareness Defendant's malfeasance in failing to abide by its federally mandated duties. This was particularly important to Mrs. Tilley because in

bringing her own children to Defendant's schools, Defendant had touted itself as a public resource specifically tailored to meet the needs of disabled students. In Mrs. Tilley's view and opinion, Defendant was doing the exact opposite.

45. Defendant in response to Mrs. Tilley's protected speech disciplined Mrs. Tilley, telling her that she was a "nonconforming" employee and lacked the "positivity" expected of Defendant's employees. In other words, Defendant sought to compel Mrs. Tilley into making a different speech that was contrary to Mrs. Tilley's strongly held views regarding Defendant's failures in fulfilling its legal obligations to her children. By forbidding Mrs. Tilley from engaging in her freedom of expression regarding Defendant's failures, Defendant violated Mrs. Tilley's right to freedom of speech as secured to her by the First Amendment.

46. Furthermore, shortly after so disciplining Mrs. Tilley, Defendant terminated Mrs. Tilley's employment.

47. Even after Defendant terminated Mrs. Tilley's employment, Defendant's attempts to quell Mrs. Tilley's speech did not end. While at the school under Defendant's invitation, Mr. Tilley expressed to one of Defendant's employees that the Defendant was failing to provide their son with necessary disability accommodations. Defendant's employee, the son's teacher, was "personally" offended by this accusation but she was neither physically threatened by or afraid of Mr. Tilley. Nonetheless, in direct response to this accusation by Mr. Tilley, Defendant elected to "trespass" both Mr. Tilley and Mrs. Tilley from the premises.

48. Defendant's foregoing acts were carried out by its head administrator, Principal Smith. Furthermore, the acts as set forth above do 'shock the conscious' and as such a reasonable person viewing the circumstances would not believe that a head administrator would be permitted

to carry out such actions unless it was in fact the affirmative policy of the Defendant itself to quell the First Amendment rights of others.

49. Defendant's foregoing acts would also chill a person of ordinary firmness from continuing to engage in the protected activity of expressing views that Defendant was failing to provide one or more children with required disability accommodations.

50. Wherefore, Defendant's actions violated Mrs. Tilley's first amendment rights, and as a result Mrs. Tilley was damaged.

## COUNT IV

### 42 U.S.C. § 1983
### Americans with Disabilities Act and Rehabilitation Act

51. Mrs. Tilley incorporates the foregoing paragraphs as if set forth fully herein.

52. Plaintiff raises this fourth cause of action under 42 U.S.C. § 1983 – Civil action for deprivation of rights, as a claim in the alternative should it be determined that the Rehabilitation Act or the Americans with Disabilities Act do not directly afford Mrs. Tilley with a meaningful recovery in damages, including but not limited to by virtue of the implied nature of one or more causes of action. See *Cummings v. Premier Rehab Keller*, 142 S.Ct. 1562 (2022).

53. The Americans with Disabilities Act secures to Mrs. Tilley the right to advocate for the disability rights of her children without retaliation.

54. The Rehabilitation Act by implication secures to Mrs. Tilley the right to advocate for the disability rights of her children without retaliation.

55. As already described above, Defendant has violated Mrs. Tilley's rights to advocate for the disability rights of her children without retaliation, have disciplined her in

employment, terminated her employment, trespassed her, intimidated her, and sought to coerce her to not pursue her disabled children's rights.

56. Furthermore, the acts complained of were carried out by Defendant's head administrator, Principal Smith. Furthermore, the acts as set forth above do 'shock the conscious' and as such a reasonable person viewing the circumstances would not believe that a head administrator would be permitted to carry out such actions unless it was in fact the affirmative policy of the Defendant to retaliate against Mrs. Tilley for seeking to secure accommodations for her children.

57. Wherefore, to the extent direct actions under the Americans with Disabilities Act or the Rehabilitation Act do not afford Mrs. Tilley the ability to recover her damages, she should be permitted to pursue those damages under 42 U.S.C. § 1983.

## DEMAND FOR JURY TRIAL

58. Ms. Tilley demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Tilley hereby requests and prays for the following relief:

1. Damages, general and special;

2. Back pay, front ("future") pay;

3. Punitive damages;

4. Prejudgment interest;

5. Post-judgment interest;

6. Reasonable attorney's fees;

7. Costs; and

8. Any other relief the Court deems just and appropriate.

DATED this __9th__ day of October, 2023.

                                                   BEARNSON & CALDWELL, LLC


                                                   */s/ Aaron K. Bergman*
                                                   Brad H. Bearnson
                                                   Wayne K. Caldwell
                                                   Aaron K. Bergman
                                                   *Attorneys for Plaintiff*

**COMPLAINT & JURY DEMAND**
*Tilley v. Thomas Edison Charter School, Inc., et al.*
Case No.                                                                                     Page **14** of **14**

Exhibit "A"

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, AZ 85012
(602) 661-0002
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/19/2023

**To:** Brooke Tilley
226 S Main St
Smithfield, UT 84335
Charge No: 35C-2021-00525

EEOC Representative and email:   YANESSA IVORY
Enforcement Supervisor
Yanessa.ivory@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

For Nancy Sienko
Acting District Director

**Cc:**
Jamie Lewis
THOMAS EDISON CHARTER SCHOOL
180 E 2600 North
North Logan, UT 84341

Aaron K Bergman
Bearnson & Caldwell Law Offices
399 N. Main Street, Suite 270
Logan, UT 84321


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 35C-2021-00525 to the District Director at Melinda Caraballo, 3300 North Central Avenue Suite 690

Phoenix, AZ 85012.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- ✓ **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.
- ✓ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.
- ✓ **Only one** major life activity need be substantially limited.
- ✓ Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- ✓ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ✓ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

Enclosure with EEOC Notice of Closure and Rights (01/22)

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ✓ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ✓ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.
- ✓ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For moreinformation, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*